AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

Joel J. Spector and Stephen J. Feldman, doing business as Spector & Feldman, LLP, Pro Se

V.

The Republic of Liberia

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

TO: (Name and address of Defendant)

THE REPUBLIC OF LIBERIA
United Nations Mission
866 UN Plaza, 4th Floor
New York, New York 10017

Minister of Foreign Affairs
Republic of Liberia
P.O. Box 10-9002
1000 Monrovia 10
LIBERIA

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

SPECTOR & FELDMAN, LLP
800 Second Avenue
New York, New York 10017

an answer to the complaint which is served on you with this summons, within THIRTY (30) days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

SPECTOR & FELDMAN, LLP, Pro Se
800 Second Avenue
New York, New York 10017
212-818-1400

Stephen J. Feldman (SJF 9889)

In the United States District Court for
The Southern District of New York

Joel J. Spector and Stephen J. Feldman,
doing business as, Spector & Feldman, LLP,
pro se,

*Plaintiffs,*

-against-

The Republic of Liberia,

*Defendant.*

DOCKET NO.:

VERIFIED COMPLAINT

Joel J. Spector and Stephen J. Feldman, doing business as, Spector & Feldman, LLP, plaintiff, pro se, for their verified complaint, alleges as follows:

NATURE OF ACTION

1. This action is brought pursuant to Section 1608 of the Foreign Service Immunities Act, 28 U.S.C. 1602-1600, to recover legal fees due and owing for services rendered by plaintiff at the specific instance and request of defendant with reference to two commercial activities for which plaintiff was specifically retained by defendant.

2. As of September 30, 2007, the total amount due and owing by defendant to plaintiff, excluding interest, is $16,013.00.

JURISDICTION

3. Defendant, the Republic of Liberia ("Liberia"), is a foreign state as defined in 28 U.S.C. 1603(a), and is subject to suit pursuant to Sections 1605(a)(2) and 1608(a) of the Foreign Sovereign Immunities Act, 28 U.S.C., Secs. 1602-1611 and 28 U.S.C. Secs. 1330 and 1332.

4. This court has jurisdiction over defendant as it was transacting certain commercial activities necessitating its retaining plaintiff to represent it. Further, certain legal issues involved in the litigation discussed below involve rights with reference to immovable property in the United States, 28 U.S.C. 1605(4), giving a further basis for jurisdiction herein.

THE PARTIES

5. Plaintiff's attorneys are duly admitted to the Bar of the State of New York and the United States Federal District Court for the Southern District of New York, with offices for the practice law located at 800 Second Avenue, New York, New York 10017.

6. Defendant, Liberia, whose current address of record is at its United Mission in New York at 866 UN Plaza, 4th floor, New York, New York 10017, is a foreign state.

BACKGROUND

7. Defendant retained plaintiff in October 2006 to perform a variety of commercial legal services on its behalf, more specifically and among other legal service, (1) plaintiff represented Liberia in negotiating the terms of a lease for its removal to its current offices, and (2) plaintiff represented Liberia as a defendant in an action instituted by the City of New Rochelle against Liberia for payment of real estate taxes allegedly due and owing on real property Liberia owned located in the City of New Rochelle. Said action, commenced pursuant

to 28 U.S.C. 1330, 1332, 1602-1611, deals with rights in immovable property (i.e. real property situated in the United States) and is still pending under Court Docket No. 06 CIV.5969.

8. On September 21, 2007, pursuant to order of Judge Brieant, plaintiff was relieved as counsel due to Liberia's failure to pay legal fees due and owing, which is the subject of this action.

COUNT I

TO RECOVER FOR
LEGAL SERVICES RENDERED

9. In or about October 2006, Liberia retained plaintiff to perform legal services at the specific instance and request of Liberia at an agreed-upon hourly rate of $300, plus payment of legal disbursements as incurred.

10. Said services were duly performed for reasonable value and for which Liberia has failed to pay the sum of $16,013, which is currently the sum due and owing and for which demand for payment has been duly made but payment has not been forthcoming.

11. Based on the facts herein stated, plaintiff is entitled to recover for legal services rendered in the sum of $16,013.

COUNT II

TO RECOVER FOR
BREACH OF CONTRACT

12. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1-11 of the complaint as if fully, and at length, set forth herein.

13. Liberia entered into a contract with plaintiff for plaintiff to perform legal services at the specific instance and request of Liberia, for which Liberia was to pay an agreed-upon sum of $300 per hour for said services, plus legal disbursements.

14. At the present time Liberia has defaulted and breached its contract by failing to pay the agreed upon sum of $16,013, presently due and owing, although due demand to do so was made.

15. As a result defendant's breach of contract, plaintiff has been damaged in the sum of $16,013.

COUNT III

TO RECOVER FOR
LEGAL SERVICES RENDERED
PURSUANT TO QUANTUM MERUIT

16. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-15 of the complaint as if fully, and at length, set forth herein.

17. Plaintiff seeks to recover for legal services rendered on the basis of Quantum Meruit, for the reasonable value of the legal services rendered and disbursements advanced by plaintiff on behalf of and at the specific instance and request of Liberia, for which the sum of $16,013 is due and owing, which is fair and reasonable for the services rendered, no part of which has been paid although duly demanded.

18. As a result of the facts aforesaid, plaintiff is entitled to recover the sum of $16,013.

COUNT IV

TO RECOVER FOR
LEGAL FEES AND DISBURSEMENTS
BASED ON AN ACCOUNT STATED

19. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-18 of the complaint as if fully, and at length, set forth herein.

20. Plaintiff has submitted various accounts, statements, bills, invoices to Liberia for the charges due and owing which currently totals $16,013.

21. Liberia has failed and refused to pay the balance due herein although various Accounts Stated were submitted, none of which Liberia refuted as being inaccurate.

22. Based on the facts aforesaid, Liberia is liable to plaintiff for the sum of $16,013.

WHEREFORE, plaintiff demands judgment:

1. On the first count for legal services rendered at the specific instance and request of Liberia in the sum of $16,103;

2. On the second count for breach of contract in the sum of $16,013;

3. On the third count to recover for legal services in the sum of $16,013 based upon Quantum Meruit;

4. On the fourth count to recover the sum of $16,013 based upon an Account Stated;

5. On all counts, appropriate interest, plus the costs and disbursements of this action,

together with such other and further relief as the court may deem just and proper.

Dated: October 2, 2007
New York, New York

Spector & Feldman, LLP
By ____________________
Stephen J. Feldman, Pro Se
(SJF 9889)
800 Second Avenue
New York, New York 10017
212-818-1400

TO: Republic of Liberia
United Nations Mission
866 UN Plaza, 4th Floor
New York, New York 10017

Minister of Foreign Affairs
Republic of Liberia
P.O. Box 10-9002
1000 Monrovia 10
Liberia

**VERIFICATION**

**STATE OF NEW YORK )**

**COUNTY OF NEW YORK) ss.:**

**Stephen J. Feldman**, being duly sworn, deposes and says:

I am a member of the firm of Spector & Feldman, LLP, plaintiff in the above entitled action, which is a Limited Liability Partnership, created under and by virtue of the laws of the State of New York, for the practice of law. I have read the foregoing complaint and know the contents thereof; that the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

Stephen J. Feldman

Sworn to before me this
2nd day of October, 2007

Notary Public

ALBERT H. GORMAN
TARY PUBLIC, State of New Yo
No. 31-4637188
Qualified in New York County
mission Expires ~~March 30, 19~~ 11/08/2010

SPECTOR & FELDMAN, LLP, Pro Se
800 Second Avenue
New York, New York 10017
212-818-1400

Stephen J. Feldman (SJF 9889)

In the United States District Court for
The Southern District of New York

Joel J. Spector and Stephen J. Feldman, doing business as, Spector & Feldman, LLP, pro se,

*Plaintiff,*

-against-

The Republic of Liberia,

*Defendant.*

DOCKET NO.:

NOTICE OF SUIT PURSUANT
TO 28 U.S.C. SEC 1608 (a)

NOTICE OF SUIT

1. Title Of Proceeding; Full Name of Court; Case or Docket number: Joel J. Spector and Stephen J. Feldman, doing business as, Spector & Feldman, LLP, Pro Se, plaintiff, against the Republic of Liberia, Defendant. The United Stated District Court for the Southern District of New York. Docket No.________________.

2. Name of Foreign State concerned: The Republic of Liberia.

3. Identity of Other Party: Spector & Feldman, LLP, is a law firm whose members are duly admitted to the Bar of the State of New York and the United States Federal District Court for the Southern District of New York and maintain its practice of law at its offices located at 800 Second Avenue, New York, New York 10017.

JUDICIAL DOCUMENTS

4. Nature of the Documents Served - Summons and Verified Complaint.

5. Nature and Purpose of the Proceeding; Why the Foreign State has been Named; Relief Requested: This legal proceeding relates to the failure of defendant, Republic of Liberia, a foreign state, to pay legal fees due and owing for services rendered by plaintiff at the specific instance and request of defendant with reference to commercial activities undertaken by said defendant. Since commercial activities on the part of the defendant have been undertaken, plaintiff, having rendered legal service with reference to said commercial activities, is seeking to recover for said services as well as for, breach of contract, legal services based on Quantum Meruit and Account Stated. There is presently due and owing to plaintiff from defendant for said legal services rendered and disbursements advanced the sum of $16,013, no part of which has been paid although duly demanded.

6. A response to the Summons and Verified Complaint is required to be submitted to the Court not later than 30 days after these documents are received. The response may present jurisdictional defenses (including defenses relating to state immunity).

7. The failure to submit a timely response with the Court can result in a default judgment and a request for execution to satisfy the judgment. If a default judgment has been entered, a procedure may be available to vacate and open up the judgment.

8. Questions relating to state immunities and to the jurisdiction of Courts over foreign states are governed by the Foreign Sovereign Immunities Act of 1976, which appears in Sections 1330, 1391(f), 1441(d), and 1602 through 1611 of Title 28 of the United States Code (Pub. L. No. 94-583; 90 Stat. 2891). As required by 22 C.F.R. §93.2(e), attached is a copy of the

Foreign Sovereign Immunities Act of 1986.

Dated: New York, New York
October 2 , 2007

Spector & Feldman, LLP
By [signature]
Stephen J. Feldman, Pro Se
(SJF 9889)
800 Second Avenue
New York, New York 10017
212-818-1400

TO: Republic of Liberia
United Nations Mission
866 UN Plaza, 4th Floor
New York, New York 10017

Minister of Foreign Affairs
Republic of Liberia
P.O. Box 10-9002
1000 Monrovia 10
Liberia

(Added Pub.L. 100–449, Title IV, § 402(d)(1), Sept. 28, 1988, 102 Stat. 1884, and amended Pub.L. 103–182, Title IV, § 414(a)(2), Dec. 8, 1993, 107 Stat. 2147.)

#### Termination of Amendments

*For provisions directing that, except for transition provisions relating to proceedings regarding protective orders and undertakings, and binational panel and extraordinary challenge committee reviews, the amendment to this section by Title IV of Pub.L. 103–182 shall cease to have effect with respect to any country on the date on which such country ceases to be a NAFTA country, see 19 U.S.C.A. § 3451.*

#### Termination of United States–Canada Free-Trade Agreement

*For provisions directing that the amendments made by Pub.L. 100–449, which enacted this section, shall cease to have effect on the date on which the United States–Canada Free-Trade Agreement ceases to be in force, see section 501(c) of Pub.L. 100–449, set out in the note under 19 U.S.C.A. § 2112.*

*Articles 1906 and 2106 of the Agreement authorize either the United States or Canada to terminate the Agreement on 6-month notice if, at the end of the 7-year period following the date of the entry into effect of the Agreement, no agreement has been entered into between the United States and Canada on a substitute system of antidumping and countervailing duties.*

### HISTORICAL AND STATUTORY NOTES

**References in Text**

Section 777(f) of the Tariff Act of 1930, referred to in text, is classified to section 1677f(f) of Title 19, Customs Duties.

**Effective and Applicability Provisions**

1993 Acts. Amendment by section 414 of Pub.L. 103–182 effective on the date the North American Free Trade Agreement enters into force with respect to the United States [Jan. 1, 1994], but not to apply to any final determination described in section 1516a(a)(1)(B) or (2)(B)(i), (ii), or (iii) of Title 19, Customs Duties, notice of which is published in the Federal Register before such date, or to a determination described in section 1516a(a)(2)(B)(vi) of Title 19 notice of which is received by the Government of Canada or Mexico before such date, or to any binational panel review under the United States-Canada Free-Trade Agreement, or to any extraordinary challenge arising out of any such review that was commenced before such date, see section 416 of Pub.L. 103–182, set out as a note under section 3431 of Title 19.

1988 Acts. Section effective on the date the United States–Canada Free-Trade Agreement enters into force (Jan. 1, 1989), and to cease to have effect on the date the Agreement ceases to be in force, see section 501(a), (c), of Pub.L. 100–449, set out in a note under section 2112 of Title 19, Customs Duties. [A Presidential Memorandum on the Canada-United States Free-Trade Agreement, dated Dec. 31, 1988, directing the Secretary of State to exchange notes with the Government of Canada to provide for the entry into force of the Agreement on Jan. 1, 1989, is set out in 24 Weekly Compilation of Presidential Documents 1688, Jan. 2, 1989.]

**Prior Provisions**

A prior section 1584, added Pub.L. 96–417, Title II, § 201, Oct. 10, 1980, 94 Stat. 1729, which provided that if a civil action within the exclusive jurisdiction of the Court of International Trade were commenced in a district court of the United States, the district court, in the interest of justice, would transfer such civil action to the Court of International Trade, where such action proceeded as if it had been commenced in the Court of International Trade in the first instance, and that if a civil action within the exclusive jurisdiction of a district court, a court of appeals, or the Court of Customs and Patent Appeals were commenced in the Court of International Trade, the Court of International Trade, in the interest of justice, would transfer such civil action to the appropriate district court or court of appeals or to the Court of Customs and Patent Appeals where such action proceeded as if it had been commenced in such court in the first instance, was repealed by Pub.L. 97–164, Title I, § 135, Apr. 2, 1982, 96 Stat. 41, eff. Oct. 1, 1982.

## § 1585. Powers in law and equity

The Court of International Trade shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States.

(Added Pub.L. 96–417, Title II, § 201, Oct. 10, 1980, 94 Stat. 1730.)

# CHAPTER 97—JURISDICTIONAL IMMUNITIES OF FOREIGN STATES

Sec.
1602. Findings and declaration of purpose.
1603. Definitions.
1604. Immunity of a foreign state from jurisdiction.
1605. General exceptions to the jurisdictional immunity of a foreign state.
1606. Extent of liability.
1607. Counterclaims.
1608. Service; time to answer default.[1]
1609. Immunity from attachment and execution of property of a foreign state.
1610. Exceptions to the immunity from attachment or execution.
1611. Certain types of property immune from execution.

[1] So in original. Does not conform to section catchline.

## § 1602. Findings and declaration of purpose

The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. Under international law, states are not





immune from
as their comn
commercial p
faction of judg
tion with thei
eign states to
by courts of
conformity wi
ter.
(Added Pub.L.

HISTO

Effective and

1976 Acts. "Se
Act [enacting
amending secti
enacting provisi
take effect nine
21, 1976]."

Separability of

Section 7 of P
of this Act [en
title, amending
enacting provisi
section 1 of th
foreign state is
other provisions
effect without th
end the provisio

Short Title

1976 Acts. A
acted this chapt
of 1976", see se
under section 1

§ 1603. D

For purpose

(a) A "fo
1608 of this
foreign stat
foreign stat

(b) An "
state" mean

(1) wh
or otherw

(2) whi
political
whose sl
owned by
thereof, a

(3) wh
United S
of this ti
third cou

(c) The "
waters, con
diction of th

immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

(Added Pub.L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2892.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

1976 Acts. Section 8 of Pub.L. 94–583 provided that: "This Act [enacting this chapter and section 1330 of this title, amending sections 1332, 1391, and 1441 of this title, and enacting provisions set out as notes under this section] shall take effect ninety days after the date of its enactment [Oct. 21, 1976]."

**Separability of Provisions**

Section 7 of Pub.L. 94–583 provided that: "If any provision of this Act [enacting this chapter and section 1330 of this title, amending sections 1332, 1391, and 1441 of this title, and enacting provisions set out as notes under this section and section 1 of this title] or the application thereof to any foreign state is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable."

**Short Title**

1976 Acts. Authorization to cite Pub.L. 94–583, which enacted this chapter, as the "Foreign Sovereign Immunities Act of 1976", see section 1 of Pub.L. 94–583, set out as a note under section 1 of this title.

## § 1603. Definitions

For purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

(c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

(Added Pub.L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2892, and amended Pub.L. 109–2, § 4(b)(2), Feb. 18, 2005, 119 Stat. 12.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

2005 Acts. Amendments by Class Action Fairness Act of 2005, Pub.L. 109–2, Feb. 18, 2005, 119 Stat. 4, applicable to any civil action commenced on or after Feb. 18, 2005, see Pub.L. 109–2, § 9, set out as a note under 28 U.S.C.A. § 1332.

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94–583, set out as a note under section 1602 of this title.

## § 1604. Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

(Added Pub.L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2892.)

### HISTORICAL AND STATUTORY NOTES

**References in Text**

The time of enactment of this Act, referred to in text, probably means the time of enactment of Pub.L. 94–583, which was approved on Oct. 21, 1976.

**Effective and Applicability Provisions**

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94–583, set out as a note under section 1602 of this title.

## § 1605. General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable; or

(7) not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph—

(A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act or the act is related to Case Number 1:00CV03110(EGS) in the United States District Court for the District of Columbia; and

(B) even if the foreign state is or was so designated, if—

(i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or

(ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That—

(1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

(c) Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

(d) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in the Ship Mortgage Act, 1920 (46 U.S.C. 911 and following). Such action shall be brought, heard, and determined in accordance with the provisions of that Act and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

(e) For purposes of paragraph (7) of subsection (a)—

(1) the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991;

(2) the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages; and

(3) the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation.

(f) No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

(g) Limitation on discovery.—

(1) In general.—(A) Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for subsection (a)(7), the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

(B) A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

(2) Sunset.—(A) Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

(B) After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would—

(i) create a serious threat of death or serious bodily injury to any person;

(ii) adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

(iii) obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

(3) Evaluation of evidence.—The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

(4) Bar on motions to dismiss.—A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

(5) Construction.—Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2892, and amended Pub.L. 100-640, § 1, Nov. 9, 1988, 102 Stat. 3333; Pub.L. 100-669, § 2, Nov. 16, 1988, 102 Stat. 3969; Pub.L. 101-650, Title III, § 325(b)(8), Dec. 1, 1990, 104 Stat. 5121; Pub.L. 104-132, Title II, § 221(a), Apr. 24, 1996, 110 Stat. 1241; Pub.L. 105-11, Apr. 25, 1997, 111 Stat. 22; Pub.L. 107-77, Title VI, § 626(c), Nov. 28, 2001, 115 Stat. 803; Pub.L. 107-117, Div. B, Ch. 2, § 208, Jan. 10, 2002, 115 Stat. 2299.)

### HISTORICAL AND STATUTORY NOTES

**References in Text**

Section 101(a)(22) of the Immigration and Nationality Act, referred to in subsec. (a)(7)(B)(ii), is classified to section 1101(a)(22) of Title 8, Aliens and Nationality.

The Ship Mortgage Act, 1920, referred to in subsec. (d), is section 30 of Act June 5, 1920, c. 250, 41 Stat. 1000, as amended, which was classified generally to chapter 25 (section 911 et seq.) of the Appendix to Title 46, Shipping, and was repealed by Pub.L. 100-710, Title I, § 106(b)(2), Nov. 23, 1988, 102 Stat. 4752, and reenacted by section 102(c) thereof as chapters 301 and 313 of Title 46, Shipping.

Section 3 of the Torture Victim Protection Act of 1991, referred to in subsec. (e)(1), is section 3 of Pub.L. 102-256, Mar. 12, 1992, 106 Stat. 73, set out in a note under section 1350 of this title.

**Effective and Applicability Provisions**

1997 Acts. Section 1 of Pub.L. 105-11 provided in part that the amendment of subsec. (a)(7)(B)(ii) by Pub.L. 105-11 is effective with respect to any cause of action arising before, on, or after April 25, 1997.

1996 Acts. Section 221(c) of Pub.L. 104-132 provided that: "The amendments made by this subtitle [amending this section and section 1610 of this title] shall apply to any cause of action arising before, on, or after the date of the enactment of this Act [Apr. 24, 1996]."

1988 Acts. Section 3 of Pub.L. 100-640 provided that: "The amendments made by this Act [amending this section and section 1610 of this title] shall apply to actions commenced on or after the date of the enactment of this Act [Nov. 9, 1988]."

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94-583, set out as a note under section 1602 of this title.

**Civil Liability for Acts of State Sponsored Terrorism**

Pub.L. 104-208, Div. A, Title 1, § 101(c) [Title V, § 589], Sept. 30, 1996, 110 Stat. 3009-172, provided that:

"(a) An official, employee, or agent of a foreign state designated as a state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 [section 2405(j) of the Appendix to Title 50, War and National Defense] while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) of title 28, United States Code [subsec. (a)(7) of this section] for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7) [subsec. (a)(7) of this section].

"(b) Provisions related to statute of limitations and limitations on discovery that would apply to an action brought under 28 U.S.C. 1605(f) and (g) [subsecs. (f) and (g) of this section] shall also apply to actions brought under this section. No action shall be maintained under this action [SIC] if an official, employee, or agent of the United States, while acting within the scope of his or her office, employment, or agency would not be liable for such acts if carried out within the United States."

## § 1606. Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2894, and amended Pub.L. 105-277, Div. A, § 101(h) [Title 1, § 117(b)], Oct. 21, 1998, 112 Stat. 2681-491; Pub.L. 106-386, Div. C, § 2002(f)(2), Oct. 28, 2000, 114 Stat. 1543; Pub.L. 107-297, Title II, § 201(c)(3), Nov. 26, 2002, 116 Stat. 2337.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

1998 Acts. Amendment by section 117(b) of Pub.L. 105-277 to apply to any claim for which a foreign state is not immune under section 1605(a)(7) of this title arising before, on, or after Oct. 21, 1998, see Pub.L. 105-277, Div. A, § 101(h) [Title 1, § 117(c)], set out as a note under section 1610 of this title.

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94-583, set out as a note under section 1602 of this title.

**Waiver of Exception to Immunity from Attachment or Execution**

Provisions formerly authorizing the President to waive the requirements of section 117(b) of Pub.L. 105-277 [Div. A, § 101(h), Title 1], (which amended this section) in the interest of national security, set out in Pub.L. 105-277, Div. A, § 101(h) [Title 1, § 117(d)], Oct. 21, 1998, 112 Stat. 2681-491, which formerly appeared as a note under section 1610 of this title, were repealed by Pub.L. 106-386, Div. C, § 2002(f)(2), Oct. 28, 2000, 114 Stat. 1543.

## § 1607. Counterclaims

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim—

(a) for which a foreign state would not be entitled to immunity under section 1605 of this chapter had such claim been brought in a separate action against the foreign state; or

(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or

(c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2894.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94-583, set out as a note under section 1602 of this title.

## § 1608. Service; time to answer; default

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

(c) Service shall be deemed to have been made—

(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

(2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

(d) In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such

default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

(Added Pub.L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2894.)

HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94–583, set out as a note under section 1602 of this title.

## § 1609. Immunity from attachment and execution of property of a foreign state

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

(Added Pub.L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2895.)

HISTORICAL AND STATUTORY NOTES

**References in Text**

The time of enactment of this Act, referred to in text, probably means the time of enactment of Pub.L. 94–583, which was approved on Oct. 21, 1976.

**Effective and Applicability Provisions**

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94–583, set out as a note under section 1602 of this title.

## § 1610. Exceptions to the immunity from attachment or execution

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or

(2) the property is or was used for the commercial activity upon which the claim is based, or

(3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law, or

(4) the execution relates to a judgment establishing rights in property—

(A) which is acquired by succession or gift, or

(B) which is immovable and situated in the United States: *Provided*, That such property is not used for purposes of maintaining a diplomatic or consular mission or the residence of the Chief of such mission, or

(5) the property consists of any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance covering the claim which merged into the judgment, or

(6) the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement, or

(7) the judgment relates to a claim for which the foreign state is not immune under section 1605(a)(7), regardless of whether the property is or was involved with the act upon which the claim is based.

(b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

(1) the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly, notwithstanding any withdrawal of the waiver the agency or instrumentality may purport to effect except in accordance with the terms of the waiver, or

(2) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a) (2), (3), (5), or (7), or 1605(b) of this chapter, regardless of whether the property is or was involved in the act upon which the claim is based.

(c) No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

(d) The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if—

(1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and

(2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

(e) The vessels of a foreign state shall not be immune from arrest in rem, interlocutory sale, and execution in actions brought to foreclose a preferred mortgage as provided in section 1605(d).

(f)(1)(A) Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7).

(B) Subparagraph (A) shall not apply if, at the time the property is expropriated or seized by the foreign state, the property has been held in title by a natural person or, if held in trust, has been held for the benefit of a natural person or persons.

(2)(A) At the request of any party in whose favor a judgment has been issued with respect to a claim for which the foreign state is not immune under section 1605(a)(7), the Secretary of the Treasury and the Secretary of State should make every effort to fully, promptly, and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and executing against the property of that foreign state or any agency or instrumentality of such state.

(B) In providing such assistance, the Secretaries—

(i) may provide such information to the court under seal; and

(ii) should make every effort to provide the information in a manner sufficient to allow the court to direct the United States Marshall's office to promptly and effectively execute against that property.

(3) Waiver.—The President may waive any provision of paragraph (1) in the interest of national security.

(Added Pub.L. 94-583, § 4(a), Oct. 21, 1976, 90 Stat. 2896, and amended Pub.L. 100-640, § 2, Nov. 9, 1988, 102 Stat. 3333; Pub.L. 100-669, § 3, Nov. 16, 1988, 102 Stat. 3969; Pub.L. 101-650, Title III, § 325(b)(9), Dec. 1, 1990, 104 Stat. 5121; Pub.L. 104-132, Title II, § 221(b), Apr. 24, 1996, 110 Stat. 1243; Pub.L. 105-277, Div. A, § 101(h) [Title I, § 117(a)], Oct. 21, 1998, 112 Stat. 2681-491; Pub.L. 106-386, Div. C, § 2002(g)(1), Oct. 28, 2000, 114 Stat. 1543; Pub.L. 107-297, Title II, § 201(c)(3), Nov. 26, 2002, 116 Stat. 2337.)

## HISTORICAL AND STATUTORY NOTES

**References in Text**

The effective date of this Act, referred to in subsecs. (a) and (b), is 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94-583, set out as an Effective and Applicability Provisions note under section 1602 of this title.

**Effective and Applicability Provisions**

1998 Acts. Pub.L. 105-277, § 101(h) [Title I, § 117(c)], provided that: "The amendments made by subsections (a) and (b) [amending this section and section 1606 of this title] shall apply to any claim for which a foreign state is not immune under section 1605(a)(7) of title 28, United States Code, arising before, on, or after the date of enactment of this Act [Oct. 21, 1998]."

1996 Acts. Amendment by Pub.L. 104-132 to apply to any cause of action arising before, on, or after Apr. 24, 1996, see section 221(c) of Pub.L. 104-132, set out as a note under section 1605 of this title.

1988 Acts. Amendment to this section by section 2 of Pub.L. 100-640, enacting subsec. (e) of this section, to apply to actions commenced on or after Nov. 9, 1988, see section 3 of Pub.L. 100-640, set out as a note under section 1605 of this title.

1976 Acts. Section effective 90 days after Oct. 21, 1976, see section 8 of Pub.L. 94-583, set out as a note under section 1602 of this title.

**Treatment of Terrorist Assets**

Pub.L. 107-297, Title II, § 201(a), (b), (d), Nov. 26, 2002, 116 Stat. 2337, provided that:

"(a) In general.—Notwithstanding any other provision of law, and except as provided in subsection (b) [of this note], in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

"(b) Presidential waiver.—

"(1) In general.—Subject to paragraph (2), upon determining on an asset-by-asset basis that a waiver is necessary in the national security interest, the President may waive the requirements of subsection (a) [of this note] in connection with (and prior to the enforcement of) any

judicial order directing attachment in aid of execution or execution against any property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations.

"(2) Exception.—A waiver under this subsection shall not apply to—

"(A) property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations that has been used by the United States for any nondiplomatic purpose (including use as rental property), or the proceeds of such use; or

"(B) the proceeds of any sale or transfer for value to a third party of any asset subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations."

"(d) Definitions.—In this section [this note] the following definitions shall apply:

"(1) Act of terrorism.—The term 'act of terrorism' means—

"(A) any act or event certified under section 102(1) [Pub.L. 107–297, Title I, § 102(1), Nov. 26, 2002, 116 Stat. 2323, which is set out in a note under 15 U.S.C.A. § 6701]; or

"(B) to the extent not covered by subparagraph (A), any terrorist activity (as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iii))).

"(2) Blocked asset.—The term 'blocked asset' means—

"(A) any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702); and

"(B) Does not include property that—

"(i) is subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by statute other than the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the United Nations Participation Act of 1945 (22 U.S.C. 287 et seq.); or

"(ii) in the case of property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, or that enjoys equivalent privileges and immunities under the law of the United States, is being used exclusively for diplomatic or consular purposes.

"(3) Certain property.—The term 'property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations' and the term 'asset subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations' mean any property or asset, respectively, the attachment in aid of execution or execution of which would result in a violation of an obligation of the United States under the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, as the case may be.

"(4) Terrorist party.—The term 'terrorist party' means a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371)."

**Waiver of Exception to Immunity from Attachment or Execution**

Pub.L. 105–277, Div. A, § 101(h) [Title I, § 117(d)], Oct. 21, 1998, 112 Stat. 2681–491, which had provided authority for the President to waive the requirements of section 117 of Pub.L. 105–277 [amending this section and section 1606 of this title and enacting provisions set out as notes under this section] in the interest of national security, was repealed by Pub.L. 106–386, Div. C, § 2002(g)(2), Oct. 28, 2000, 114 Stat. 1543; Pub.L. 107–297, Title II, § 201(c)(3), Nov. 26, 2002, 116 Stat. 2337.

## § 1611. Certain types of property immune from execution

(a) Notwithstanding the provisions of section 1610 of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act shall not be subject to attachment or any other judicial process impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States.

(b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if—

(1) the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of execution, or from execution, notwithstanding any withdrawal of the waiver which the bank, authority or government may purport to effect except in accordance with the terms of the waiver; or

(2) the property is, or is intended to be, used in connection with a military activity and

(A) is of a military character, or

(B) is under the control of a military authority or defense agency.

(c) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution in an action brought under section 302 of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996 to the extent that the property is a facility or installation used by an accredited diplomatic mission for official purposes.

(Added Pub.L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2897, and amended Pub.L. 104–114, Title III, § 302(e), Mar. 12, 1996, 110 Stat. 818.)